IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SUN LIFE ASSURANCE COMPANY | ) | |
| OF CANADA (U.S.), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:06-CV-139 (CAR) |
| | ) | |
| LYNN C. WILLIAMS and | ) | |
| JEAN C. WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

Plaintiff Sun Life Assurance Company of Canada (U.S.) ("Sun Life") filed the instant interpleader action on May 3, 2006, seeking this Court's resolution of the adverse claims to the death benefit of the Keyport Index Multipoint Annuity, Contract Number KA12698876 ("Annuity"), Sun Life issued to Martha H. Craig, now deceased. Named Defendants Jean C. Wilson ("Wilson") and Lynn C. Williams ("Williams") are competing claimants to the Annuity's death benefit. Presently before the Court is Defendant Wilson's Motion for Summary Judgment (doc. 49). For the reasons stated below, Wilson's motion is **GRANTED**.

1

## II. FACTUAL AND PROCEDURAL HISTORY

Sun Life issued the Annuity to Martha Craig on May 5, 2003, upon receipt of an initial purchase payment of $86,879.70 from Jackson National Life Insurance Company ("Jackson National"). In her Annuity application, Martha Craig designated her husband, Henry N. Craig, as the primary beneficiary, and her daughters, Wilson and Williams, as the contingent beneficiaries. An insurance agent named Terence Collins ("Collins"), an employee of Jackson National and de facto financial advisor for the Craigs, allegedly solicited and processed Martha Craig's Annuity application from his office in Gulfport, Mississippi.

Martha Craig died on April 16, 2005. Following her death, Henry Craig did not file a claim for the Annuity's death benefit. On September 27, 2005, Henry Craig died. Both individuals were, at the time of their deaths, residents of Dublin, Georgia. From the time the Annuity was issued to Martha Craig until her death, Sun Life received no change-of-beneficiary request(s) for the Annuity. After Henry Craig's death, however, Williams asserted a claim for the entire death benefit, and Wilson filed a claim for half of the death benefit.

Upon deciding that it could not determine the proper beneficiaries of the Annuity, Sun Life filed the instant interpleader action, naming both Wilson and Williams as Defendants. Both Defendants filed answers to Sun Life's Complaint. Williams's answer

included a counterclaim against Sun Life wherein she alleged, among other things, that Collins fraudulently induced Martha Craig's purchase of the Annuity, and that Sun Life was wholly or partially responsible for Collins's fraud.

On June 13, 2006, Sun Life moved to deposit funds representing the value of the Annuity's death benefit into the Court's registry. Shortly thereafter, Sun Life filed a Motion to Strike, or in the Alternative, to Dismiss Williams's counterclaim (doc. 18). On August 3, 2006—just four days after the Court entered its Scheduling and Discovery Order (doc. 24)—Williams filed her Motion for Summary Judgment (doc. 25). Sun Life responded to Williams's motion by filing its own summary-judgment motion (doc. 34) on September 6, 2006. Wilson, too, filed a summary-judgment motion (doc. 49) on January 2, 2007.

On March 7, 2007, the Court partially granted Sun Life's Motion to Dismiss Williams's counterclaim (doc. 18), and denied Williams's summary-judgment motion. (Orders, doc. 61, 62.) Because the Court's denial of Williams's summary-judgment motion effectively disposed of most of the arguments Sun Life raised in its summary-judgment motion, the Court denied Sun Life's motion on May 24, 2007. (Order, doc. 66.)

The Court now turns to the merits of Defendant Wilson's summary-judgment motion.

III. **LEGAL DISCUSSION**

In her motion, Wilson requests the equal distribution of the Annuity's death benefit to both her and Williams. Williams opposes Wilson's motion, arguing that Wilson is not entitled to Annuity's death benefit, which is part of Henry Craig's estate, because she was excluded from their father's will. Wilson maintains, however, that the Annuity proceeds are a non-probate asset; thus, the fact that she was excluded from her father's will is immaterial because the beneficiary designations in the Annuity— rather than in Henry Craig's will—dictate to whom the death benefit will be awarded.

Based on the parties' arguments, the salient issue before the Court is whether the Annuity's death benefit is a probate or non-probate asset. If the death benefit is a probate asset, then this Court is without jurisdiction to order the distribution of this asset because the disposition thereof is within the province of the state probate court charged with the administration of Henry Craig's estate. *Marshall v. Marshall*, 547 U.S. 293, 306 (2006) (probation exception to otherwise proper federal jurisdiction "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court"). If the annuity is a non-probate asset, however, then the Court will exercise its jurisdiction over this case and award the death benefit to the individual(s) who is/are legally entitled to it.

Before reaching the merits of this case, however, the Court must address a choice-of-

law issue raised by the parties. Williams argues that the Court should apply Mississippi law to the facts of this case because the Annuity was issued by an insurance agent and agency located in Mississippi. Wilson maintains, however, that the issues before the Court must be adjudicated in accordance with Georgia law.

Because this case is premised on diversity jurisdiction, the Court must apply Georgia's choice-of-law rules. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997) (in diversity cases, the district court must apply both the substantive law and the choice-of-law rules of the state in which it sits—that is, the "forum state"). Though Georgia has three main choice-of-law rules, the parties contend that only one rule—*lex loci contractus*—is applicable to the issue presented. Under the *lex loci contractus* doctrine, "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assoc.'s, Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006). Here, the parties' disagreement centers on where the contract was "made." Wilson argues that the contract was made in Georgia because the last act required to complete the contract—the delivery of the Annuity—occurred in Georgia. Although Williams admits Martha Craig was a Georgia resident at the time the contract was delivered (and therefore completed), she nonetheless contends that the contract was made in Mississippi because the Annuity was issued in Mississippi by an insurance agent licensed in that state.

Though the parties assume *lex loci contractus* is the most applicable choice-of-law rule, the unique subject matter of this case requires the Court to look beyond this general doctrine for the appropriate choice-of-law rule to apply in this instance. The Court's conclusion in this regard is based on the fact that, with respect to the death-benefit determination, the parties do not dispute the validity, nature, construction, or interpretation of the Annuity. In fact, the issue presented has little, if anything, to do with the terms of the Annuity and everything to do with Georgia's choice-of-law rule(s) governing decedent's estates. In these types of cases, Georgia law dictates that "the personal property[1] of a deceased person passes and is to be administered according to the law of his domicile." *Thomas v. Morrisett*, 76 Ga. 384, 385 (Ga. 1886). Williams does not dispute that Henry Craig was domiciled in the state of Georgia when he died; therefore, the Court will apply the substantive law of Georgia to the issue now before it. (*See* Def. Williams's Answer, doc. 8, at 3.)

Under Georgia law, the proceeds of a decedent's annuity vest in the designated beneficiary(ies) on the death of the decedent and are not part of the decedent's estate. *King v. Travelers Ins. Co.*, 415 S.E.2d 176, 178-79 (Ga. Ct. App. 1992). Thus, the distribution of an annuity's proceeds is governed by the decedent/primary certificate

---

[1] An annuity (or, more specifically, the monetary proceeds therefrom) is considered "fungible intangible personal property" under Georgia law. *See Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001).

6

owner's contractual beneficiary designation(s), rather than by the provisions of the decedent's will. *See **id.*** at 178. Here, the right to Martha Craig's Annuity death benefit vested in Henry Craig, the designated beneficiary, upon her death. Pursuant to the "Death Provisions" of the Annuity, Henry Craig, as the designated beneficiary, became the new sole primary certificate owner upon Martha Craig's death. (Annuity Contract, Ex. B to Pl.'s Mot. Summ. J., doc. 34, at 20.) As the new primary certificate owner, Henry Craig was entitled to exercise all certificate ownership rights, but was also subject to all of the terms and conditions Martha Craig agreed to when she purchased the Annuity. This means Henry Craig had the right to, for example, surrender the certificate and receive either the death benefit or the surrender value of the Annuity (depending on the time of surrender), or change Martha Craig's beneficiary designations. Henry Craig did neither of these things, however, and his inaction resulted in the automatic continuation of the certificate following Martha Craig's death. (Annuity Contract, Ex. B, at 20.) Upon Henry Craig's death, the right to claim the Annuity's death benefit passed to the contingent beneficiaries named in the Annuity: Defendants Williams and Wilson. (Annuity Applic., Ex. A to Pl.'s Mot. Summ. J., doc. 34, at 6.) Pursuant to the terms of the Annuity and relevant Georgia law, then, the Court hereby finds that Williams and Wilson are each entitled to one-half of the Annuity's death benefit.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Wilson's Motion for Summary Judgment (doc. 49) is hereby **GRANTED**. ACCORDINGLY, the Court hereby **ORDERS** the Clerk of Court to disburse in two equal shares all funds held in the Court's registry relating to the above-captioned case to Lynn C. Williams and Jean C. Wilson, respectively.

SO ORDERED, this 18th day of June, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

JAB/ssh